34366.   WHITE *v.* WILLIAMS *et al.*

DECIDED JANUARY 28, 1953.

*John H. Poole,* for plaintiff in error.

*R. D. Smith, Robert R. Forrester,* contra.

SUTTON, C. J.   C. B. White filed this suit for damages against G. O. Williams and Benjy Crumley in the Superior Court of Tift County, on November 26, 1951, and alleged substantially: that the plaintiff, for the year 1951, rented from the defendant Williams 7 acres of land to be cultivated in cotton and 3 acres to be cultivated in corn, and the plaintiff was to receive half of the cotton crop grown on the 7 acres and all of the corn grown on the 3 acres; that a house was located on the 7-acre tract, which the plaintiff was to have to live in until he had harvested his crop of cotton and corn during the year 1951, without payment of any rent for the house other than in making the crop on the place, and the plaintiff moved into the house in the winter or spring of 1951 under this express understanding; that the 7 acres of land belonged to the defendant Crumley, who also owned the house thereon into which the plaintiff moved and lived, the defendant Williams having rented said land and house from the defendant Crumley and subrented the same to

the plaintiff; that Williams was to receive from the plaintiff half of the cotton raised on said land and, in turn, was to deliver the same to the defendant Crumley; that the plaintiff completed the cultivation of said cotton and corn crops and laid the same by, and nothing else was to be done thereto until said crops were harvested; that soon after said crops were laid by, the defendant Crumley demanded that the plaintiff pay $10 per month rent for the use of the house or move thereform, which the plaintiff declined and refused to do, reminding Crumley that he was entitled to the use of the house until he had harvested the crops; that within a few days thereafter, on July 7, 1951, the defendants swore out a dispossessory warrant against the plaintiff, a copy of same being attached to the petition as an exhibit; that the plaintiff was unable to make bond to stay the dispossessory-warrant proceedings, and consequently the defendants had a deputy sheriff, on July 13, 1951, to dispossess him by removing his household goods and effects from the house, and the nearest house that the plaintiff could find in which to live was two miles therefrom; that later on, while the plaintiff was undertaking to arrange to have his cotton picked, the defendants went in and had the same gathered, there being at least 3000 pounds of lint cotton, which was worth 35 cents per pound and was of the value of $1050, and seed of the value of $125, thus making a total of $1175 for the cotton, from which the reasonable expense of $240 for harvesting the same is to be deducted, leaving $935, of which amount the plaintiff was entitled to one-half, less an indebtedness of $234 to the defendant Williams, thus leaving a balance of $234 ($233.50) of the proceeds of the cotton due the plaintiff, which has not been paid or accounted for by the defendants to the plaintiff; that the 3 acres of corn produced 75 bushels, which, at the market price of $1.50 per bushel, were worth $103.50 ($112.50); that the value of the cotton and corn which the plaintiff should have received amounted to $337.50 ($346), and that the plaintiff has been damaged by the defendants in said amount; and that the defendants entered into a conspiracy to get the plaintiff's part of said crops and to drive him and his family away from the house where they lived. He also sued for exemplary damages in the amount of $2000.

The defendants were duly served, but they failed to file an answer. The case was marked in default by the judge of the superior court at the December, 1951, term of said court, and it was in default when it proceeded to trial before a jury, on September 2, 1952.

The plaintiff's testimony tended to sustain the allegations of his petition. He testified to the effect that the defendant Williams approached him in the winter or spring of 1951 and wanted to rent him 7 acres of land to be cultivated in cotton and 3 acres to be cultivated in corn; that he agreed to rent this land, and it was agreed between them that the plaintiff was to have half of the cotton crop to be grown on the 7 acres and all of the corn to be raised on the 3 acres, and he was to have the house on the 7 acres to live in until after said crops were harvested. He testified that he moved into the house in March, 1951, and planted the 7 acres in cotton and the 3 acres in corn, cultivated the same, and laid his crops by about the first of July, and nothing remained to be done to said crops except to harvest them when they matured; that soon after his crops were laid by, the defendant Crumley came to him early in July and demanded that the plaintiff pay him $10 per month as rent for the house where he was living or move out; that the plaintiff declined to do so and told Crumley that he had rented the land and house from Williams and was to have the house to live in rent-free until after his crops were harvested; that the defendants then, on July 7, 1951, swore out a dispossessory-warrant proceeding against the plaintiff and dispossessed him, as he was unable to make bond, and then later they gathered the crop before he could do so, although he intended to gather the crop and was undertaking to get a mechanical cotton picker to pick the cotton; that at least 3000 pounds of lint cotton were grown by him on the 7 acres, which was worth 35 cents per pound, and the corn would have made 50 bushels to the acre and was worth $2 per bushel; and that he received no part of said crops or the proceeds therefrom.

The plaintiff testified that he entered into the following agreement: "July 9, 1951. Georgia, Tift County. We, G. O. Williams and C. B. White, make the following agreement: We

agree for C. B. White to have one-half of the production of 7 acres of cotton, more or less, and to gather and market the same. The other one-half of the total production of this 7 acres of cotton goes to G. O. Williams, who, in turn, owes this one-half of all production of this 7 acres of cotton to B. F. Crumley for rent. All total 7 acres of cotton must be picked by C. B. White and the total cost of picking of all 7 acres of cotton is to be paid out of C. B. White's one-half of production. This 7 acres of cotton is located on B. F. Crumley's farm on Medford Road. Also, an indebtedness of $233.33 owed by C. B. White to G. O. Williams is to be paid out of the production of C. B. White's one-half of 7 acres of cotton. If C. B. White fails to ·pick the cotton in due time, G. O. Williams will pick the cotton."

Robert Fordham and J. C. Story testified for the plaintiff to the effect that the plaintiff made a good crop of cotton and corn on the 7-acre and 3-acre tracts which he was cultivating for the defendants, and that his crop averaged as good as any in that neighborhood.

At the conclusion of the plaintiff's evidence, the trial judge directed a verdict for the defendants. The plaintiff made a motion for a new trial, assigning error on the direction of a verdict against him, and the exception here is to the judgment overruling his motion.

■ It appears that the trial judge was under the impression that the agreement made between C. B. White and G. O. Williams, on July 9, 1951, constituted a novation of their former agreement, and that the plaintiff's evidence failed to sustain his suit as brought. We think that the trial judge was in error in this respect. The subject matter, terms, and consideration of these agreements were the same. C. B. White was to have half of the cotton grown by him on the 7 acres, and the other half was to go to G. O. Williams. It is true that it was stated in the written agreement, dated July 9, 1951, that Williams was to turn his half of the rent cotton over to Crumley, but this was of no concern to White. The parties to the agreement were C. B. White and G. O. Williams, and the agreement so stated. It amounted to no more than a statement in writing or a renewal of their former agreement.

Code § 20-115 is as follows: "One simple contract as to the

same matter, and on no new consideration, does not destroy another between the same parties; but if new parties are introduced by novation, so as to change the person to whom the obligation is due, the original contract is at an end." "The law is well recognized that a contract may be renewed between the same parties, as to the same subject matter and upon the same consideration, without working a novation." *Foy-Adams Co.* v. *Smith*, 19 *Ga. App.* 172 (91 S. E. 242); *Cohen's Department Stores* v. *Siegel*, 60 *Ga. App.* 79, 80 (2 S. E. 2d, 762).

■ As above stated this suit was for unliquidated damages and it was in default. Code (Ann. Supp.) § 110-401 provides that where the case is in default, the plaintiff, at any time on or after the first day of the term to which the case is returnable, shall be entitled to verdict and judgment by default as if every item and paragraph of the petition were supported by proper evidence; and his claim, allegation or demand may at any time thereafter be tried without the intervention of a jury unless the suit is one for unliquidated damages, whether ex contractu or ex delicto, in either of which events the plaintiff shall be required to introduce evidence and establish the amount of damages before a jury, and the defendant may contest the amount of such damages before a jury, with the right to move for a new trial in respect to such damages, and also to except as in other cases. It was ruled in *Lenney* v. *Finley*, 118 *Ga.* 427 (2) (45 S. E. 317): "Where judgment by default is rendered in a case in which the damages are not liquidated, the defendant is thereby concluded as to the truth of all the material allegations of the petition save as to the amount of the damages." Under the pleadings and the evidence in this case, the only question or issue for determination was the amount of the damages which the plaintiff was entitled to recover.

■ It follows that the court erred in directing a verdict for the defendants and in overruling the plaintiff's motion for a new trial.

*Judgment reversed. Felton and Worrill, JJ., concur.*